UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANGIE PARKS,

Plaintiff,

v.

LINCOLN NATIONAL LIFE
INSURANCE COMPANY,

Defendant.

Case No. 22-12814
Honorable Shalina D. Kumar
Magistrate Judge David. R. Grand

---

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR
JUDGMENT ON THE ADMINISTRATIVE RECORD (ECF NO. 15) AND
DENYING DEFENDANT'S MOTION FOR JUDGMENT ON THE
ADMINISTRATIVE RECORD (ECF NO. 16)**

---

## I.    Introduction

Plaintiff Angie Parks sues defendant Lincoln National Life Insurance

Company ("Lincoln") under Section 502 of the Employee Retirement

Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132, seeking

reinstatement of her long-term disability benefits through her employer-

sponsored benefit plan. ECF No. 1.

Lincoln filed the administrative record, ECF No. 17, and the parties

filed and briefed cross-motions for judgment. ECF Nos. 15-16, 19-20. The

Court heard oral argument on January 17, 2024. This matter is now ripe for

decision. For the reasons below, the Court grants Parks' motion and denies Lincoln's motion.

## II. Background

### A. Parks received total disability benefits due to her severe psychiatric condition.

Parks worked as a sales representative in her employer's call center and had a long history of anxiety and depression. ECF No. 17-5, PageID.1019; ECF No. 17-1, PageID.294. Under her employer's long term disability benefit plan (the "Plan"), which Lincoln administered, Parks could receive total disability benefits under certain conditions. *See* ECF No. 17-4, PageID.798; ECF No. 17-5, PageID.938.

As applicable here, the Plan provides up to 24 months of disability benefits to a claimant if the claimant is "totally disabled" from working in her own occupation and her disability primarily stems from mental illness such as depressive or anxiety disorders. ECF No. 17-1, PageID.209, 231-32, 249, 269-70. The Plan defines "total disability" as "due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of his or her Own Occupation." *Id.* at PageID.209, 249. It defines "Own Occupation" as the "collective description" of jobs related to the occupation "in which the Insured Employee was employed with the Employer prior to Disability." *Id.* at PageID.247. It defines "Main Duties" as

the job tasks that "[a]re normally required to perform the Insured

Employee's Own Occupation" and "[c]ould not reasonably be modified or

omitted." *Id.*

Sometime in early July 2020, Parks stopped working due to

worsening depression and anxiety. *See* ECF No. 17-4, PageID.798; ECF

No. 17-5, PageID.938. In August 2020, she began seeing board-certified

psychiatrist Chalakudy Ramakrishna for telehealth sessions to treat her

psychiatric condition. ECF No. 17-1, PageID.300. Ramakrishna's session

notes from August to December 2020 indicate the following:

Ramakrishna diagnosed Parks with major depressive disorder,

recurrent, moderate and gave her a Global Assessment of Functioning[1]

(GAF) score of 45. ECF No. 17-1, PageID.300. During her first visit with

Ramakrishna, Parks described many psychiatric symptoms, including

mood swings, crying spells, trouble sleeping, focusing, and concentrating,

---

[1] GAF is a simple ratings scale from the Diagnostic and Statistical Manual
of Mental Disorders for evaluating how well a person is able to function and
go about their life. *Gilewski v. Provident Life & Accident Ins. Co.*, 683 F.
App'x 399, 402 n.1 (6th Cir. 2017). The scale range is from 0 to 100, where
higher scores indicate greater levels of functioning. The GAF score is made
as a standard part of all psychiatric/psychological diagnoses. *Id.* A score
between 41 and 50 reflects serious mental illness symptoms or serious
impairment in a person's school, work, or social functioning. The GAF is
"just one tool used by clinicians to develop the clinical picture. It cannot be
used in isolation from the rest of the evidence to make a disability
decision." *Id.*

being tired, hopeless, frustrated, and irritable, controlling behavior due to anxiousness, and difficulty talking with others. *Id.* And during this period, Ramakrishna treated Parks over biweekly sessions lasting around 20 minutes, prescribed four different medications and different dosages due to Parks' persistent symptoms, and made mental status findings and various notes. *See* ECF No. 17-1, PageID.303-13.

Ramakrishna's mental status findings show that although he observed that Parks' speech and thought content were normal during their first session, he subsequently noted from late-August to December 2020 that Parks' speech was rambling, and her thought content was preoccupied. *See id.* at PageID.300-13. Ramakrishna otherwise observed from August to December 2020 that Parks' appearance, memory, and concentration had no issues; but that her mood, affect, and behavior were sad or withdrawn and anxious. *See id.*

In November and December 2020, Parks showed some signs of improvement. On November 24, 2020, Ramakrishna noted that Parks "feels much better" after changing Parks' medication dosage but that she still had trouble with sleeping, focusing, concentrating, and controlling behavior. *Id.* at PageID.313. In December 2020, Ramakrishna noted that Parks had a "little less" anxiety, depression, and mood swings but got

"irritable and frustrated when she [was] with strangers outside the mall" and still had "some anxiety some mood swings and depression." *Id.* at PageID.315-17. At their last December 2020 session, Ramakrishna decreased Parks' medication dosage. *See id.* at PageID.317.

Parks filed a claim for total disability benefits under the Plan. ECF No. 17-4, PageID.798. To assess Parks' total disability claim, Lincoln obtained Parks' medical records, which included Ramakrishna's notes from his August to December 2020 sessions with Parks. Based on Parks' medical record, as well as a file review finding Parks impaired due to her symptoms' severity, her multiple medication changes, and the time she needed to adjust to her medications and to stabilize, Lincoln approved Parks' total disability claim. *See* ECF No. 17-4, PageID.815, 893; ECF No. 17-3, PageID.715. Parks received long-term total disability benefits for the period between September 29, 2020 to December 29, 2020. *See* ECF No. 17-3, PageID.715.

### B. While Parks' psychiatric condition persisted, Lincoln discontinued total disability benefits past April 29, 2021.

After that period and starting in 2021, Parks continued treating with Ramakrishna, but their sessions turned monthly. In January, Ramakrishna noted that Parks still had anxiety, depression, and mood swings and prescribed Parks an additional medication for her psychiatric symptoms.

Page **5** of **26**

ECF No. 17-3, PageID.645. In February, Ramakrishna noted that Parks felt "much better" most of the time, but she gets anxious and irritable when shopping; they discussed Parks' buying sprees, spending habits, and fears. *Id.* at PageID.643. In March, Ramakrishna noted that Parks felt "[a] little bit better . . . a little less agitated" but had mood swings and insecurity issues. *Id.* at PageID.642. In April, Ramakrishna noted that Parks still had "anxiety, depression, psychomotor retardation" and that she had crying spells, frustration, a lack of energy and motivation, and trouble sleeping, focusing, and concentrating. *Id.* at PageID.640. And in May, Ramakrishna noted that Parks had the same symptoms from April, except that she had "a lot of anxiety, depression mood swings." *Id.* at PageID.638.

In all these sessions, Ramakrishna maintained Parks' GAF score of 45; and as for his mental status findings in almost all these sessions, he noted no issues with Parks' appearance and memory but that her speech was rambling, behavior was anxious, affect was sad, and thought content was preoccupied. *Id.* at PageID.638-45.

In May 2021, Lincoln informed Parks that it would not pay total disability benefits beyond April 29, 2021. *Id.* at PageID.575, 661; ECF No. 17-4, PageID.761. Lincoln made its determination after reviewing Ramakrishna's updated sessions notes and a March 30, 2021 opinion from

neuropsychologist Lori Folk-Barron. *See* ECF No. 17-3, PageID.652-53.

Lincoln cited the Plan's applicable provisions and merely stated that "the

frequency and nature of your symptoms would not support an inability to

perform your own occupation." *Id.* at PageID.661.

### C. Parks continued her psychiatric treatment and unsuccessfully appealed Lincoln's benefits termination decision.

After Lincoln's determination, Parks continued her sessions with

Ramakrishna. From June to December 2021, Ramakrishna noted Parks'

persistent psychiatric symptoms, such as anxiety, depression, mood

swings, trouble sleeping, focusing, and concentrating, with one month

being particularly good and another particularly bad. ECF No. 17-3,

PageID.626-36; *see id.* at PageID.632 (noting in August 2021 Parks

"feeling much better"); *id.* at PageID.628 (noting in November 2021 Parks

"having a lot of [mental health] issues"). From January to March 2022,

Ramakrishna again noted Parks' persistent, at times severe psychiatric

symptoms, as well as her frustration or irritability towards her boyfriend.

*See* ECF No. 17-1, PageID.319-25; *see also id.* at PageID.321 ("still as

[sic] irritability and anger . . . difficulty sleeping focusing concentrating . . .

severe mood swings, crying spells . . . isolated and withdrawn"). During

these periods, Ramakrishna maintained Parks' GAF score of 45,

consistently spoke with Parks about coping with her mental health issues,

indicated as mental status findings no issues with Parks' appearance, thought content, and memory but restrictive or withdrawn speech, behavior, and affect. ECF No. 17-3, PageID.626-36; ECF No. 17-1, PageID.319-25. At some point, Ramakrishna prescribed a new psychiatric medication, for which he considered changing the dosage in late-March 2022. ECF No. 17-1, PageID.325.

On March 23, 2022, Lincoln denied Parks' appeal of its decision denying continued benefits, explaining that the medical evidence failed to support ongoing restrictions and limitations beyond April 29, 2021. ECF No. 17-3, PageID.574. Lincoln quoted the opinion of psychiatrist Marybeth Valiulis, who reviewed Parks' medical records and found "inconsistencies" between Parks' reported psychiatric symptoms and Ramakrishna's mental status findings from September 2020 to February 2021. *Id.* at PageID.576, 609. Lincoln also explained that the medical records did not show that Parks had been referred to a "higher level of care" and that the standard of care for psychological conditions includes weekly to biweekly psychotherapy. *Id.* at PageID.576-77.

**D. Despite Parks' persistent condition through August 2022, Lincoln issued its final decision upholding its benefits termination.**

Parks appealed Lincoln's decision affirming its benefits termination and continued her sessions with Ramakrishna. *See* ECF No. 17-2, PageID.363. From April to August 2022, Ramakrishna noted Parks' continued, persistent, and most times severe psychiatric symptoms, which began to include panic attacks and loss of appetite. ECF No. 17-1, PageID.327-28; ECF No. 17-2, PageID.330-36. Ramakrishna talked with Parks about changing her medications, ECF No. 17-1, PageID.327; maintained Parks' GAF score of 45; consistently spoke with Parks about her coping skills; and indicated as his mental status findings no issues with Parks' appearance, thought content, and memory but restrictive or withdrawn speech, behavior, and affect. *Id.* at PageID.327-28; ECF No. 17-2, PageID.330-36.

After reviewing Parks' medical records through August 2022, Registered nurse Amy N., a "Consultant [for] Lincoln Financial Group," opined that the mental status exams in Parks' sessions with Ramakrishna from May 11, 2021 to August 4, 2022—most of the period at issue—"are consistently normal other than some affect findings with no evidence of psychotic thoughts or behaviors." ECF No. 17-1, PageID.294. She found

numerous deficiencies in the medical evidence and concluded that the evidence was inconsistent with a psychiatric impairing illness. *Id.*; *see also id.* (finding no "risk of harm to self or others, no hallucinations, manic or hypomanic episodes . . . .").

On August 30, 2022, Parks submitted two signed statements for Lincoln's consideration. ECF No. 17-2, PageID.363. In the first statement, dated August 17, 2022, Parks states that she experiences the following symptoms on a near daily basis despite her medications: depressed mood, diminished interest in almost all activities, insomnia, fatigue, feelings of worthlessness and guilt, and diminished ability to think, concentrate, or make decisions. *Id.* at PageID.395. In the second statement, dated August 29, 2022, Ramakrishna states that he personally observed Parks' behavior as consistent with her diagnosis, that she experiences significant impairment in social and occupational functioning consistent with her GAF score of 45. *Id.* at PageID.397. He opines that due to Parks' significant issues with memory, concentration, anxiety, and agitation, she is not capable of performing her occupation's main duties. *Id.* Both Parks' and Ramakrishna's statements describe the severity of Parks' symptoms. *See id.* at PageID.395, 397.

Despite Parks' updated medical records, on October 31, 2022, Lincoln upheld its determination that "the medical records do not support restrictions and limitations that would render [Parks] unable to perform the main duties of [her] own occupation" beyond April 29, 2021. *Id.* at PageID.283. Lincoln recited Amy N.'s opinion as to the lack of evidence of a psychiatric impairing illness. *See id.*

## III.   Standard of Review

The parties agree that the Court reviews this matter de novo. Under the de novo standard, no deference or presumption of correctness is afforded to the administrator's decision, and the Court instead endeavors to determine whether the administrator made the "correct decision" based only on the record before the administrator. *Perry v. Simplicity Eng'g*, 900 F.2d 963, 966 (6th Cir. 1990). The plaintiff bears the burden of proving, by a preponderance of evidence, that she is disabled. *Javery v. Lucent Techs., Inc. Long Term Disability Plan*, 741 F.3d 686, 700-01 (6th Cir. 2014). The Court must give a "fresh look" at the record, giving "proper weight to each expert's opinion in accordance with supporting medical tests and underlying objective findings." *Id.* at 700.

## IV.   Analysis

As a preliminary matter, the Court must determine the scope of this dispute. Broadly speaking, the Court must determine whether Lincoln's decision to discontinue total disability benefits was correct based on a fresh look at the record. *See id.* Lincoln decided to discontinue benefits because Parks allegedly failed to prove she was totally disabled—from its initial decision to terminate benefits to its final decision on Parks' second administrative appeal, Lincoln maintained that the medical evidence did not support restrictions and limitations rendering Parks unable to perform the main duties of her occupation beyond April 29, 2021.

But in its briefs before the Court, Lincoln asserts for the first time new reasons supporting its benefits termination decision. "Though the Sixth Circuit does not appear to have addressed the issue, decisions of other Circuits have unanimously rejected attempts to raise new reasons for denial once litigation has begun." *Berg v. Unum Life Ins. Co. of Am.*, No. 21-CV-11737, 2023 WL 2619015, at *8 (E.D. Mich. Mar. 23, 2023) (listing cases and applying rule on de novo review). Regardless of the applicable standard of review, a court cannot adopt a plan administrator's "post-hoc rationalizations" without undermining "the same procedural fairness concerns" outlined in ERISA. *Id.* (quoting *Collier v. Lincoln Life Assurance*

*Co. of Bos.*, 53 F.4th 1180, 1186-88 (9th Cir. 2022)). "This rule prevents a claimant from being sandbagged by a rationale the plan administrator adduces only after the suit has commenced." *Wolf v. Life Ins. Co. of N. Am.*, 46 F.4th 979, 986 (9th Cir. 2022) (cleaned up).

Here, Lincoln first asserts that Parks never "'personally' visited" Ramakrishna or sought a personal exam to satisfy the Plan's definitions for "Regular Care of a Physician" and "Proof of Continued Disability." ECF No. 20, PageID.1176-77. Yet, before this litigation Lincoln never relied on these Plan definitions to support its decision to discontinue benefits. So, the Court declines to consider Lincoln's new rationale. *See Spradley v. Owens-Illinois Hourly Emples. Welfare Benefit Plan*, 686 F.3d 1135, 1141 (10th Cir. 2012) (doing same where denial letters never suggested benefits sought might be governed by other plan provisions newly asserted in litigation).

Second, Lincoln asserts that the Social Security Administration's (SSA) denial of disability benefits for Parks shows that her "condition is not totally disabling." *Id.* at PageID.1177. Even if the SSA's decision has any relevance as to whether Parks was totally disabled under the specific terms of the Plan, Lincoln only ever contended that Parks failed to carry her burden of showing total disability, which would require an assessment as to whether Parks' evidence shows total disability. Lincoln never made the

separate and distinct contention that Parks was "not totally disable[ed]," *id.*, which would require an assessment of both parties' evidence to determine whether Parks was in fact not totally disabled. The Court, therefore, declines to consider Lincoln's newly raised argument that Parks was not totally disabled. *See George v. Reliance Standard Life Ins. Co.*, 776 F.3d 349, 353 (5th Cir. 2015) (doing same where plan administrator newly asserted that claimant "failed to carry his burden" but denied benefits only because claimant "was not Totally Disabled").

Last, Lincoln asserts that Parks never identified "specific functional limitations" from her mental health condition or "delineated each of [her occupation's] Main Duties" that her mental health condition precluded her from performing. *Id.* at PageID.1182; *see* ECF No. 16, PageID.114-15. To the extent Lincoln argues that Parks must detail how her particular psychiatric symptoms specifically interfered with every main duty of a call center sales representative, Lincoln never before suggested such a particularity requirement underlying its decision.[2]

---

[2] To the extent Lincoln argues that the evidence, such as Ramakrishna's August 29, 2022 statement, does not provide a link between Parks' psychiatric symptoms and her main occupation duties, the Court doubts that is necessary. *See Okuno v. Reliance Std. Life Ins. Co.*, 836 F.3d 600, 611 (6th Cir. 2016) (stating that the plan administrator and the court, not medical professionals, are to apply "the relevant evidence to the occupational standard"). Moreover, the Court believes that argument, if

At each stage of the administrative review process, Lincoln's decision quoted the applicable provisions and reasoned that the medical evidence did not show severe mental illness in general—it said nothing particular about Parks' "Main Duties," let alone the relationship between those duties and Parks' symptoms. "[A] decision on a disability benefits claim requires 'an application of the relevant evidence to the occupational standard . . . . '" *Javery*, 741 F.3d at 701 (quoting *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 618 (6th Cir. 2006)); *see also Elliott*, 473 F.3d at 618-19 (holding plan administrator did not rely on an application of evidence to occupational standard where it gave "no indication that [it] reasoned from [the claimant's] condition to her ability to perform her occupation"). Because Lincoln has never connected symptoms or features of Parks' condition to her ability to perform the Main Duties of a call center sales representative, it cannot now assert such reasoning as a basis for its decision. *See also Wolf v. Life Ins. Co. of N. Am.*, 46 F.4th 979, 985-86 (9th Cir. 2022) (rejecting administrator-favoring framework for what is an "accident" under plan where

---

anything, would go to the weight of the evidence. Because issues of weight and credibility are part of Lincoln's rationale that the evidence failed to show total disability, the Court considers Lincoln's argument that the evidence does not show a link between Parks' symptoms and occupation duties as part of Lincoln's existing rationale.

Page **15** of **26**

administrator did not apply such framework to deny claim). Accordingly, the Court declines to consider this new argument.

Because Lincoln's only reason for discontinuing benefits was that the medical evidence did not show that Parks was totally disabled beyond April 29, 2021, the Court considers that reason only. And because Parks must prove total disability by a preponderance of the evidence, the determinative question here is whether the medical evidence shows that it is more likely than not that Parks was unable to perform the Main Duties of her occupation beyond April 29, 2021. *See Javery*, 741 F.3d at 700-01. The Court finds it does.

Ramakrishna's session notes show that the same psychiatric symptoms that rendered Parks totally disabled before April 29, 2021 persisted beyond that date. Ramakrishna's first session note describes Parks' symptoms as including mood swings, crying spells, trouble sleeping, focusing, and concentrating, controlling behavior due to anxiousness, difficulty talking with others, and being tired, hopeless, frustrated, and irritable. The session notes through April 29, 2021 reflect that although Parks sometimes "felt better," with certain symptoms fluctuating over time, her symptoms, including depression, anxiety, and mood swings, persisted or manifested in different forms such that her condition was still considered

totally disabling by Lincoln. *See* ECF No. 17-1, PageID.313, 315-17; ECF No. 17-3, PageID.640-45. The notes for the rest of 2021 and through August 2022 show that with less fluctuation, Parks continued having most of the same disabling symptoms, including intense depression, anxiety, and mood swings, and even developed new symptoms such as panic attacks and loss of appetite. Based on the notes, Parks' psychiatric condition remained substantially the same over time or got worse. Because her pre-April 2021 condition, fluctuations and all, amounted to a total disability under the Plan, Ramakrishna's notes describing Parks' persistent psychiatric symptoms provide ample reason to find that Parks' post-April 2021 condition likewise precluded her from performing her occupation's main duties.

Ramakrishna's session notes indicate no change in circumstances that undercut Park's claim that her work-precluding condition extended beyond April 29, 2021. The session notes show Parks' sessions with Ramakrishna were always remote and around 20 minutes long.[3] However,

---

[3] Lincoln attempts to undermine the weight of Ramakrishna's session notes or Ramakrishna's credibility by contending that Parks' sessions with Ramakrishna were remote and short. But there are no issues with the sessions' format and length from August 2020 to April 2021—the period that Lincoln had determined Parks was totally disabled. Likewise, the Court sees no legitimate reason why there would be issues with the same format and length for the sessions beyond April 2021.

they also show that after four months of biweekly sessions in 2020 resulting in four medication changes and certain dosage changes, Parks began seeing Ramakrishna once a month in 2021, and the 20 subsequent sessions resulted in two medication changes and two discussions about changing Parks' treatment. Observing these trends, Lincoln argues, "If psychiatric symptoms were unimproved and so severe as to be totally debilitating, the medical evidence would [but does not] document increased frequency and intensity of psychiatric treatment." ECF No. 16, PageID.113; *see also* ECF No. 20, PageID.1172. Put differently, Lincoln contends that Parks cannot have a work-precluding psychiatric condition while also seeing Ramakrishna and changing her medications and dosages less frequently.

But Lincoln's argument fails. Lincoln provides no basis for the Court to conclude factually that one cannot both have a work-precluding psychiatric condition and rather infrequent treatment changes. Nor does Lincoln provide any basis for the idea that the severity of a psychiatric condition positively correlates with the frequency and intensity of psychiatric treatment. Without more, the severity and functional effects of a condition is one matter, whereas the manner of treating that condition is an entirely different matter.

Further, from August 2020 to April 2021—the period during which Parks' condition amounted to total disability—Parks had four months of biweekly sessions and frequent treatment changes and another four months of monthly sessions and only one treatment change. If, according to Lincoln, Parks cannot have a totally disabling psychiatric condition and less frequent sessions and treatment changes, her condition would not have amounted to total disability during half the period for which it had been deemed to have met that standard. Not only did it do so, but despite Parks' treatment, her psychiatric condition also produced many of the same psychiatric symptoms, plus new ones, beyond April 2021. Indeed, Ramakrishna consistently discussed nonpharmacological ways for Parks to cope with various symptoms and from time to time changed or considered changing Parks treatment, indicating that Parks' treatment was still ongoing. The evidence undermines Lincoln's claim that Parks' less frequent sessions and treatment changes means substantial improvement or is otherwise inconsistent with a work-precluding condition.

Ramakrishna's session notes provide additional, related reasons to find that Parks' post-April 2021 condition precluded her from performing her occupation's main duties. First, they show that Parks maintained a GAF score of 45 beyond April 29, 2021. That score indicates that Parks had

serious mental illness symptoms or a serious impairment in her work or social functioning. A GAF score may not "in isolation" support a disability decision due to the score's reliability issues, as Lincoln points out. *See Gilewski*, 683 F. App'x at 402 n.1. But it is a "standard part" of psychiatric diagnoses and "one tool used by clinicians to develop the clinical picture." *Id.* When the Court considers the entire medical picture, including Parks' diagnoses of major depressive disorder and generalized anxiety disorder, the nature and manifestation of her psychiatric symptoms, and the symptoms' persistence beyond April 2021 despite treatment, the Court finds that the GAF score further contributes to a finding that Parks had a work-precluding psychiatric condition beyond April 2021.

Second, Ramakrishna's session notes provide mental status findings consistent with Parks' psychiatric condition. At each session from May 2021 to August 2022, Ramakrishna found that Parks' speech and affect were restrictive and her behavior withdrawn. In context, these findings suggest that Parks would tend to use few words and have difficulty initiating or maintaining conversations; isolate herself from others, show little interest or pleasure in activities, and have low energy and motivation; and avoid expressing emotions and display a narrow range of emotional expressions. Like Parks' GAF score, the Court finds that given the entire medical picture,

Ramakrishna's mental status findings further support that Parks had a work-precluding condition beyond April 2021. Altogether, Ramakrishna's session notes provide strong support for finding total disability beyond April 2021.

Likewise, Parks' and Ramakrishna's signed statements provide support for finding total disability beyond April 2021. Both statements confirm the persistence of Parks' symptoms despite her medications, and Ramakrishna's statement—stating that he personally observed Parks' behavior as consistent with her diagnosis and she has significant social and work functioning impairments consistent with her GAF score of 45—underscore the weight of his session notes. In his statement, Ramakrishna offers his opinion that Parks is totally disabled due to significant issues with memory, concentration, anxiety, and agitation, but Lincoln contends that Ramakrishna's contemporaneous mental status findings contradict that opinion. Indeed, Ramakrishna's contemporaneous mental status findings as to Parks' "intact" memory and "normal" thought content appear inconsistent with his assertion of Parks' significant memory and concentration issues. ECF No. 17-3, PageID.626-45; ECF No. 17-1, PageID.319-28; ECF No. 17-2, PageID.330-36. Without more, Ramakrishna's opinion is entitled to minimal weight. *See Maleszewski v.*

*Liberty Life Assur. Co. of Boston*, No. 09-13926, 2010 WL 1416995, at *10 (E.D. Mich. Apr. 8, 2010). But as the Court explains above, other parts of Ramakrishna's statement combined with other parts of the record provide sufficient support for finding total disability beyond April 2021.

Lincoln attempts to discount much of the medical evidence of Parks' psychiatric condition by arguing that Parks cannot rely on her subjective, self-reported complaints. Lincoln's argument has no merit. Psychiatric conditions like clinical "depression can be difficult to measure through 'objective' tests but that difficulty does not render [a court] unable to evaluate [subjective] medical evidence." *Gilewski*, 683 F. App'x at 406 (giving weight to "self-reporting records" collected over a long time period to find that "depression made it difficult to . . . interact with employees and customers or to make decisions"). "[P]sychiatrists typically treat symptoms that are subjective and must rely on a patient's subjective descriptions to evaluate and diagnose the patient." *James v. Liberty Life Assurance Co.*, 582 F. App'x 581, 588 (6th Cir. 2014). Accordingly, "[w]here a plan does not explicitly limit proof to objective medical evidence, courts have . . . considered subjective evidence, including the insured's self-reported evidence." *Conway v. Reliance Std. Life Ins. Co.*, 34 F. Supp. 3d 727, 734 (E.D. Mich. 2014).

Here, the Plan does not limit proof to objective medical evidence. Parks' psychiatric condition would have been difficult to objectively measure in any case, and the primary way to evaluate her condition is through subjective evidence. There is no reason why the Court should discount much of the evidence of Parks' psychiatric condition simply because it is based on Parks' self-reporting, especially where she described her psychiatric symptoms consistently over years and consistently with her diagnosis, her GAF score, and Ramakrishna's mental status findings.

Finally, the Court is not persuaded by the opinions of neuropsychologist Folk-Barron, psychiatrist Valiulis, and registered nurse Amy N., all of whom based their opinions solely on a review of Parks' file. Although a court may consider file reviews to make a benefits decision, the file reviews here do not impede a finding that Parks' condition precluded her from performing her occupation's main duties. *See Javery*, 741 F.3d at 702; *Iley v. Metro. Life Ins. Co.*, 261 F. App'x 860, 864 (6th Cir. 2008). Because none of the file reviewers ever personally interacted with Parks, their file reviews are "questionable as a basis for identifying whether [Parks] is disabled by mental illness." *See Javery*, 741 F.3d at 702; *Smith v. Bayer Corp. Long Term Disability Plan*, 275 F. App'x 495, 505-09 (6th Cir. 2008)

(noting that "[c]ourts discount the opinions of psychiatrists who have never seen the patient for obvious reasons").

The Court also finds each file review questionable in substance. Although each file reviewer opined that the evidence did not show Parks' inability to perform her occupations' Main Duties, none of them engaged in an analysis of Parks' symptoms relative to her duties as a call center sales representative.

As for each file review's distinct deficiencies, Folk-Barren suggests that Parks' condition had improved by December 2020 because Parks started seeing Ramakrishna monthly, yet as the Court discussed above, there is no factual basis to adopt that idea. Folk-Barren's review was also limited to pre-December 2020 medical evidence, thereby failing to address the most relevant evidence, and failing speak to the issue at hand— whether the evidence shows total disability beyond April 2021.

Valiulis's review was similarly limited, conclusorily asserting "inconsistencies" between Parks' symptoms and Ramakrishna's mental status findings based on evidence predating the relevant time period. As a result, it also fails to speak to the issue at hand. Amy N.'s review indicates that Ramakrishna found Parks' mental status as "consistently normal" except for her affect, but as discussed above, the Court finds otherwise.

Amy N. also pointed to many psychiatric symptoms the evidence did not indicate, such as the "risk of harm to self" or hallucinations. But she does not explain how the absence of those symptoms precludes a finding that Parks was functionally impaired after April 2021. Nor is Amy N.'s rationale cogent given that the evidence supporting total disability before April 29, 2021 lacks nearly all of the same indications that she says prevents a total disability finding after that date.

Lincoln's file reviews are unpersuasive, and based on the medical evidence in the record, the Court finds that it is more likely than not that Parks was unable to perform the Main Duties of her occupation beyond April 29, 2021. Parks carried her burden of proving total disability under the Plan, and Lincoln erred in discontinuing Parks' total disability benefits past April 29, 2021.

## V.    Conclusion

For the reasons above, the Court **GRANTS** Parks' motion for judgment on the administrative record (ECF NO. 15) and **DENIES** Lincoln's motion for judgment on the administrative record (ECF No. 16). Lincoln is directed to pay Parks under the Plan's terms. Parks is entitled to receive back payments for long-term total disability benefits beginning on April 29,

2021, and continuing so long as Parks continues to meet the Plan's requirements for entitlement to such benefits.

**IT IS FURTHER ORDERED** that if Parks wishes to request an award of attorney fees and costs, such request, along with documentation in support, must be filed within 21 days of the day this Order issues and that Lincoln may respond within 14 days thereafter.

As all of the outstanding claims in this matter have been fully resolved, this case is hereby **DISMISSED** with prejudice. The Court will retain jurisdiction to consider any request for reasonable attorney fees.

s/ Shalina D. Kumar
SHALINA D. KUMAR
Dated: March 21, 2024          United States District Judge